IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | Case No. 3:21-cr-58 |
| | ) | |
| Cody James Belgarde, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court are two competing motions: (1) the Government's omnibus motion to continue trial, for clarification of time for competency restoration, and for exclusion of time under the Speedy Trial Act (Doc. Nos. 34, 35), and (2) the Defendant Cody James Belgarde's motion for an order finding the Defendant's competency unrestorable (Doc. No. 38). Belgarde responded to the Government's motion on February 3, 2022. Doc. No. 39. The Government responded to Belgarde's motion on February 15, 2022. Doc. No. 40. Belgarde filed a reply in support of his motion on February 22, 2022. Doc. No. 41. For the reasons below, the Government's motion is granted, and Belgarde's motion is denied.

## I.  BACKGROUND

On March 17, 2021, a federal grand jury indicted Belgarde on one count of first degree murder within Indian Country, in violation of 18 U.S.C. §§ 1111 and 1153. Doc. No. 2. Within two months of the indictment, the Government moved for a psychiatric examination of Belgarde to assess Belgarde's competency. Doc. No. 23. Belgarde did not object to the motion, and the Court granted the motion on May 13, 2021. Doc. No. 25.

Belgarde then underwent an evaluation at a Federal Detention Center in Englewood, Colorado ("FDC Englewood"). Belgarde was evaluated by Dr. Jessica Micono, a forensic psychologist for the Federal Bureau of Prisons ("BOP"). On August 10, 2021, Dr. Micono's

forensic evaluation of Belgarde was filed with the Court. Doc. No. 27. In her detailed report and evaluation, Dr. Micono opined that "there is evidence to indicate [the Defendant] suffers from a mental disorder . . . that significantly impairs his present ability to understand the nature and consequences of the court proceedings against him, and his ability to properly assist counsel in his defense." Id. at 11. As a result, she recommended that Belgarde undergo competency restoration treatment pursuant to 18 U.S.C. § 4241(d). Id. at 12.

Given Dr. Micono's report, evaluation, and findings, on August 12, 2021, the parties stipulated that Belgarde was incompetent to proceed and agreed a competency hearing was unnecessary. Doc. No. 28. The parties asked the Court to issue an order adopting Dr. Micono's findings and committing Belgarde "to the custody of the Attorney General for formal competency restoration procedures pursuant to 18 U.S.C. § 4241(d)." Id. The same day the stipulation was filed, the Court adopted the parties' stipulation, found Belgarde incompetent based on Dr. Micono's report and evaluation, and ordered competency restoration for Belgarde. Doc. No. 29. In that order, the Court stated:

> Pursuant to 18 U.S.C. § 4241(d), the Court **ORDERS** that the Defendant shall be committed to the custody of the Attorney General:
>
> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
> (2) for an additional reasonable period of time until –
>     (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
>     (B) the pending charges against him are disposed of according to law; whichever is earlier.

Id. The competency restoration order was sent to the United States Marshals Service ("USMS"), and the USMS sent the order to FDC Englewood to facilitate designation to a BOP Federal Medical Center[1] ("FMC") for restoration.

By way of background, once competency restoration treatment is ordered for a criminal defendant, the defendant is typically transported by the USMS and the Justice Prisoner & Alien Transportation System ("JPATS") to an FMC within the BOP. See Doc. No. 40-3. There are three BOP FMCs in the United States that conduct competency restoration – (1) FMC Butner in Butner, North Carolina, (2) FMC Devens in Ayer, Massachusetts, and (3) FMC Springfield in Springfield, Missouri. Id. Due to the COVID-19 pandemic, and already limited bed space at FMCs, it is not uncommon, in this Court's experience, for there to be an approximately 12-15 week wait for a defendant to be admitted to an FMC for restoration once restoration is ordered. The competency restoration transportation process and similar wait times are reflected in the BOP's Study Order Process and BOP Bed Availability Information. Id.

In mid-October 2021, and approximately two months after the restoration order was filed as to Belgarde, the undersigned's chambers was contacted by the USMS. The USMS informed chambers[2] that Belgarde had arrived back in the District of North Dakota and inquired when he would need a hearing. Chambers noted its surprise that Belgarde would be back in the District so soon and that it had not received a report or restoration certificate from BOP. In early November, after further inquiry from chambers, the USMS discovered that Belgarde had been mistakenly

---

[1] While competency evaluations can be performed at several Federal Detention Centers, competency restoration treatment is performed at only three FMCs within BOP.

[2] It is quite common, in this Court's experience, for the USMS to discuss transportation and logistical details for criminal defendants with chambers. Moreover, the Court notes that the detailed defendant transportation information it often receives, as compared to the less detailed information provided to others, is considered by the USMS to be highly sensitive and strictly confidential.

transported back to the District of North Dakota from BOP and FDC Englewood. The USMS then began the logistical and transportation process for Belgarde to be sent back to BOP and be designated and admitted to an FMC for restoration. Ultimately, in November, Belgarde was designated to FMC Butner, and the USMS was informed it would be a 12 week wait for admission. Belgarde was admitted to FMC Butner for restoration on February 15, 2022.

Running parallel to restoration was Belgarde's trial date. Because of restoration, the Government filed a motion to continue Belgarde's trial date on September 3, 2021. Doc. No. 30. Belgarde did not oppose the motion. On September 8, 2021, the Court granted the Government's motion and reset Belgarde's trial date to March 1, 2022. Doc. No. 31. As a part of that order, the Court noted that periods of delay resulting from the fact that the defendant is mentally incompetent shall be excluded in computing the time within which a trial must commence under the Speedy Trial Act, citing 18 U.S.C. § 3161(h)(4). Id. Thus, the Court excluded all time elapsing from the date of the order (September 8, 2021) until trial (March 1, 2022) from any Speedy Trial Act calculation. Id.

In early January, per the Government's briefing, the Government reached out to BOP for an update on Belgarde's restoration. Doc. No. 34. At that time, the Government learned Belgarde had not arrived at his designated FMC and that he was expected to arrive in late January or early February. Id. The Government also reached out to the USMS, and the USMS provided the Government Belgarde's custodial and transport history, which noted the transportation error that resulted in Belgarde being transported back to the District of North Dakota instead of transported to an FMC. Id. Because more than four months had passed from the time competency restoration was ordered and the time Belgarde was ultimately admitted to FMC Butner, the Government filed the present motion asking for clarification of time for competency restoration and seeking a

continuance of the March 1, 2022 trial date, along with further exclusion of such time under the Speedy Trial Act. Id.

On February 1, 2022, Belgarde filed a competing motion, asking the Court to find Belgarde's competency unrestorable because the "Attorney General exceeded the statutory time limit" for restoration and "the time wasted is unreasonable." Doc. No. 38. Defense counsel further asks the Court to cancel the March 1, 2022 trial date and proceed with ordering a dangerousness assessment under 18 U.S.C. § 4246(b).

## II. DISCUSSION

The competing motions seek resolution and clarification of the statutory period for competency restoration procedures under 18 U.S.C. § 4241(d) and specifically § 4241(d)(1). As previewed above, the question raised by the parties is whether the "reasonable period of time, not to exceed four months" under § 4241(d)(1) for restoration begins from the date competency restoration is ordered, as Belgarde suggests, or if it begins from the date Belgarde is hospitalized and admitted to FMC Butner for restoration, as the Government suggests.

### A. Clarification of Time for Competency Restoration

Before proceeding to the plain language of § 4241(d)(1), it is important to note the two competing principles behind the competency and restoration statute. On the one hand, "the first principle recognizes the sovereign's power to bring an accused to trial as fundamental to a scheme of ordered liberty and prerequisite to social justice and peace." Illinois v. Allen, 397 U.S. 337, 347 (1970). On the other hand, consistent with due process, "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171 (1975). To reconcile these competing interests, Congress passed 18

U.S.C. §§ 4244, 4246 (1949), which provided the initial statutory framework for committing an incompetent defendant to custody to try to restore competency and allow the defendant to stand trial. Initially, the statutes had no time limit on detention, creating obvious issues and concerns. Eventually, through various appellate decisions, a "rule of reasonableness" as to detention was imposed to reconcile with due process requirements. And in Jackson v. Indiana, 406 U.S. 715, 733 (1972), the United States Supreme Court ruled the reasonableness requirement was, in fact, mandated by due process. Id. Specifically, the Supreme Court stated:

> [A] person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future.

Id. at 738.

In direct response to Jackson, Congress enacted 18 U.S.C. § 4241, the statute at issue here. For its part, 18 U.S.C. § 4241(d) addresses the competency restoration procedure and states:

> **(d) Determination and disposition** -- If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility --
>
> > (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
> >
> > (2) for an additional reasonable period of time until –
> >
> > > (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

> (B) the pending charges against him are disposed of according to law;
>
> whichever is earlier.

Id. (emphasis added).

As it must when interpreting statutes, the Court begins its analysis with the plain language of the statute. If the statutory language is unambiguous, and the "statutory scheme is coherent and consistent," the inquiry ends there. Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997).

With all of these principles in mind, the Court agrees with other decisions interpreting § 4241 that certain language in the statute is unambiguous on its face. See United States v. Magassouba, 544 F.3d 387 (2d Cir. 2008). Section 4241(d)(1) plainly states "the Attorney General shall hospitalize the defendant for treatment in a suitable facility for such a reasonable period of time, not to exceed four months." 18 U.S.C. § 4142(d)(1) (emphasis added). As recognized in Magassouba, "[c]onsistent with Jackson v. Indiana, an incompetent defendant may be hospitalized for such an evaluative purpose only for 'a reasonable period of time, not to exceed four months.' This four-month limitation is, in fact, the only explicit time reference in § 4241." 554 F.3d at 405 (emphasis added).

The Ninth Circuit Court of Appeals reached the same conclusion in United States v. Villegas, 589 F. App'x 372 (9th Cir. 2015). In that case, which is particularly instructive, Villegas moved to dismiss the indictment on the grounds that the time limit in § 4241(d)(1) had expired four months after the district court's restoration order. Id. On review, the Ninth Circuit concluded:

> The plain language of § 4241(d) provides that the four-month period of evaluative commitment begins on the date of hospitalization. See 18 U.S.C. § 4241(d) ("The Attorney General shall hospitalize the defendant for treatment in a suitable facility . . . for such a reasonable period of time, not to exceed four months . . . ."). The statutory period was therefore triggered when Villegas arrived at FMC–Springfield on March 5 or March 6, 2014.

Id. at 373 (emphasis added).

Here, the competency restoration order specifically cited § 4241(d)(1) and ordered Belgard committed to the custody of the Attorney General for a reasonable period of time, not to exceed four months, as is necessary to determine if Belgarde's competency is able to be restored. Doc. No. 29. Though the statutory language as to hospitalization was not expressly mirrored in the Court's order, the plain language of § 4241(d)(1) provides that such commitment begins when Belgarde is <u>hospitalized</u> and admitted to FMC Butner to begin restoration. While the Court recognizes the inadvertent mistake by BOP in returning Belgarde to the District of North Dakota instead of holding him for competency restoration, which resulted in a short delay for Belgarde's admission to FMC Butner, per the plain language of the statute, the statutory four-month period is triggered by hospitalization. See <u>Magassouba</u>, 544 F.3d at 408 ("[W]e construe § 4241(d)(1) to impose a four-month limit only on the Attorney General's authority to hold an incompetent defendant <u>in custodial hospitalization</u> for the purpose of determining the probability of his regaining competency."). This is entirely consistent with the purpose of the statute, which is "to enable medical professionals to accurately determine whether a criminal defendant is restorable to mental competency." <u>United States v. Strong</u>, 489 F.3d 1055, 1062 (9th Cir. 2007).

Accordingly, and consistent with the plain language of the statute and relevant legal authority, the Court finds that Belgarde's statutory period for hospitalization was triggered when Belgarde arrived at FMC Butner on February 15, 2022. To that end, the Court grants the Government's motion for clarification of the restoration order, consistent with the findings above.

    **B.    Finding Belgarde's Competency Unrestorable**

While related to the Government's motion for clarification on the period for competency restoration, Belgarde separately moves for an order finding his competency unrestorable because

the "Attorney General exceeded the statutory time limit" for restoration and "the time wasted is unreasonable."[3] Doc. No. 38. Belgarde further asks the Court to cancel the March 1, 2022 trial date and proceed with a dangerousness assessment under 18 U.S.C. § 4246(b).

In his motion, Belgarde draws the Court's attention to the reasonableness of his commitment and detention and the related due process concerns. He asserts the plain language of § 4241(d)(1) expressly limits the Attorney General to a four-month period for <u>commitment</u> to complete the restoration process and that the Attorney General has exceeded the four months. However, Belgarde's argument wholly fails to account for the language that immediately precedes the four-month limitation – chiefly, that the Attorney General "shall hospitalize the defendant." To that end, the Court incorporates its analysis of § 4241(d)(1) in Section II.A above and finds that the Attorney General has not exceeded the four-month statutory period for restoration. Belgarde was admitted to FMC Butner for restoration on February 15, 2022. Thus, the Attorney General is within the statutory period for restoration. The Court acknowledges Belgarde's concerns with the delay between the date of restoration order (August 12, 2021) and date of admission to FMC Butner (February 15, 2022). However, the Court is not persuaded that the delay on these facts is unreasonable and warrants the drastic remedy that Belgarde seeks in his motion.

Belgarde also argues the Court's conclusion simply incentivizes the BOP to delay admissions of defendants to FMCs and allows the Attorney General to hold defendants indefinitely. The Court disagrees. As an initial matter, the fact that Belgarde is now at FMC Butner and has started restoration contradicts Belgarde's argument and concerns about indefinite detention. Second, placing a four-month limitation on the Attorney General for restoration that

---

[3] The Court notes that Belgarde's counsel was aware Belgarde was in the District of North Dakota in mid-November 2021, and no motion or concern as to reasonableness or Belgarde's location and/or hospitalization status was raised at that time.

9

starts from the date of any given district court's order, in addition to being contrary to the plain language of the statute, would force the Attorney General into an unworkable and unreasonable timeline to complete restoration by forcing it to account for factors well outside of its control, including, but not limited to, COVID-19 quarantine protocols, transportation delays, and other hospital bed availability (whether at an FMC or any other local hospital or facility). Moreover, and importantly, the statutory framework of 18 U.S.C. § 4241(d) expressly embraces flexibility in timing and specifically contemplates situations where the Attorney General may need additional time, beyond four months, to complete restoration. See 18 U.S.C. § 4241(d)(2).

Simply stated, the present timeline of Belgarde's restoration, while not without an inadvertent transportation error by BOP, is not unreasonable under the totality of the circumstances and is entirely consistent with the plain language of § 4241(d)(1). Indeed, Belgard is currently at FMC Butner and is undergoing restoration treatment. The Court declines Belgarde's invitation to deem his competency unrestorable and to proceed to a dangerousness assessment under 18 U.S.C. § 4246. Accordingly, Belgarde's motion (Doc. No. 38) is denied.

C.   **Trial Continuance and Speedy Trial Act Time Exclusion**

Finally, turning to the second half of the Government's motion, the Government moves for a continuance of Belgarde's March 1, 2022, trial date and for the continued exclusion of time under the Speedy Trial Act. Doc. No. 34. Belgarde agrees a continuance is necessary, though he asserts the continuance is necessary to complete the dangerousness assessment. Doc. No. 38.

As Belgarde is currently undergoing restoration treatment, the Court finds there is good cause to continue the trial, and the Court grants the Government's motion to continue trial (Doc. No. 34). Trial shall be rescheduled for Tuesday, August 30, 2022 at 9:30 a.m. in Fargo. A seven to ten (7-10) day trial is anticipated. Additionally, the Court specifically finds that all periods "of

delay resulting from the fact that Belgarde is mentally incompetent" shall be excluded in computing the time within which a trial must commence under the Speedy Trial Act. 18 U.S.C. § 3161(h)(4). Thus, all time elapsing from the date Belgarde was found incompetent by the Court (August 12, 2021) until trial shall be excluded from any Speedy Trial Act calculation. See 18 U.S.C. § 3161(h)(4).

### III.     CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. For the reasons above, the Government's motion to continue trial, for clarification of time for competency restoration, and for exclusion of time under the Speedy Trial Act (Doc. Nos. 34 and 35) is **GRANTED**. Belgarde's motion for an order finding Belgarde's competency unrestorable (Doc. No. 38) is **DENIED**. As noted above, Belgarde's trial date shall be reset for Tuesday, August 30, 2022.

**IT IS SO ORDERED**.

Dated this 23rd day of February, 2022.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court